acm

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KANSAS DEPARTMENT OF LABOR** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **Case No. 05-4087-JAR** |
| **BEARINGPOINT, INC.,** ) | |
| **a Delaware Corporation,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on defendant, Bearingpoint Inc.'s (Bearingpoint), Motion for Summary Judgment. (Doc. 13.) The Court has considered the arguments set forth in the parties' briefs along with the record submitted and is now prepared to rule. As described more fully herein, the Court **GRANTS** defendant's summary judgment motion.

**I.      Uncontroverted Facts**

Plaintiff, Kansas Department of Labor (KDOL), hired defendant, Bearingpoint, along with other vendors, to perform various phases in an extensive rework of KDOL's employment security systems and processes for the improvement of its administration of the Kansas Employment Security Laws. Plaintiff and defendant entered into a contract on March 4, 2005. The contract contains a provision that limits defendant's liability to the fees paid by plaintiff to defendant under the contract (hereinafter "limitation of liability provision"). That section states:

> The State agrees that [defendant's] total liability to the State or any third party for any and all damages whatsoever arising out of or in any way related to this Agreement from any cause, including but not limited to contract liability or Contractor negligence, errors, omissions, strict liability, breach of contract or breach of warranty shall not, in the aggregate, exceed the fees paid to Contractor hereunder.

Plaintiff has paid nothing to defendant under the March 4, 2005 contract.

The contract also contains a Termination for Convenience provision that limits plaintiff's liability under the contract by allowing plaintiff to terminate the contract if applicable funding becomes unavailable. That section provides:

> This Agreement may be terminated by [plaintiff] if all or part of applicable funding becomes unavailable to [plaintiff]. If applicable funding is reduced, [plaintiff] may either cancel this Agreement or offer a contract amendment reflecting the reduced funding. If this Agreement is cancelled, [plaintiff] agrees to reimburse [defendant] for all expenditures made in good faith that are unpaid at the time of termination, including all work products completed or in-process, and for the time required to discontinue onsite activities in an orderly manner, not to exceed the maximum amount payable under this Agreement.

Additionally, the contract contains a provision regarding liquidated damages that may be sustained by plaintiff in the event of delay by defendant. This provision reads:

> It is agreed by [plaintiff] and [defendant] that in the event that [defendant] fails to timely submit or complete Phase 1, as defined in the SOW, damage shall be sustained by [plaintiff], and that it is and will be impractical and extremely difficult to determine the actual damage which [plaintiff] will sustain in the event of and by reason of such delay.

Further, the contract requires the application of Kansas law in governing and construing the contract.

Plaintiff points the Court to two more provisions in the contract, the content of which is

undisputed: a termination for default provision and an insurance coverage provision.[1] The termination for default provision states:

> Either party shall have the right to terminate this Agreement if the other Party is in default or any obligation hereunder and such default is not cured within thirty (30) days of receipt of a notice specifying such default. In the event of such a termination, [plaintiff] shall reimburse [defendant] for all work that had been satisfactorily completed prior to such termination.

The insurance coverage provision requires defendant to maintain "Professional Errors and Omissions Insurance which shall include [defendant's] Computer Errors and Omissions Coverage, with limits not less than $1,000,000 per claim and in the aggregate."

On July 23, 2005, plaintiff filed this action alleging that defendant was in breach of the contract between the parties and seeking actual damages in excess of $100,000. Defendant answered and asserted a counterclaim against plaintiff also alleging breach of contract and requesting relief in the amount of $652,690. Defendant has filed a motion for summary judgment on plaintiff's breach of contract claim arguing that the contract's limitation of liability provision bars plaintiff's claim because plaintiff has paid nothing to defendant under the contract. The motion pending in front of the Court does not address defendant's counterclaim against plaintiff.

---

[1] Plaintiff also refers the Court to a setoff clause that the plaintiff states is located on page three of the contract. (Doc. 17 at 7.) The Court has extensively combed the record for this setoff clause, and cannot locate this alleged provision in the contract. Regardless of the contract's inclusion of such provision, as described more fully herein, plaintiff is not entitled to affirmative relief under a breach of contract theory against this defendant when the limitation of liability provision prevents plaintiff from recovering damages from this defendant. However, plaintiff retains the right to assert setoff against defendant's counterclaim independent of a contract provision. *See, e.g.*, *Hatfield v. Burlington N. R.R. Co. v. Bingham Transp., Inc.*, 747 F. Supp. 634, 641 (D. Kan 1990); *see also Mynatt v. Collis*, 57 P.3d 513, 526 (Kan. 2002).

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set for specific facts' that would be admissible in evidence in the event of trial

---

[2]Fed. R. Civ. P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Id.* at 251-52.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8]*Id.*

from which a rational trier of fact could find for the nonmovant."[9]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[10]

**III.   Discussion**

The contract specifically states and the parties agree that the contract is governed by Kansas law.  Under Kansas law, the construction and interpretation of a written contract is a matter of law for the court.[11]  "'In considering a contract which is unambiguous and whose language is not doubtful or obscure, words used therein are to be given their plain, general and common meaning, and a contract of this character is to be enforced according to its terms.'"[12] Whether a contract is ambiguous is a question of law for the court.[13]  "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language."[14]  "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning."[15]  "The court must not consider the disputed provision in isolation, but must instead construe the term in light of the contract as a whole, such that if construction of the contract in its entirety removes

---

[9]*Id.*

[10]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[11]*Wagnon v. Slawson Exploration Co.*, 874 P.2d 659, 666 (Kan. 1994)).

[12]*Id.* (citing *Darby v. Keeran*, 505 P.2d 710 (Kan. 1973)).

[13]*Simon v. Nat'l Famers Org., Inc.*, 829 P.2d 884, 888 (Kan. 1992).

[14]*Id.*

[15]*Id.* (citing *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 810 P.2d 283 (Kan. 1991)).

any perceived ambiguity, no ambiguity exists."[16]

In this case, the limitation of liability provision unambiguously limits plaintiff's recovery from defendant to the amount defendant has already paid to plaintiff under the contract. However, plaintiff argues that the various remedy provisions of the contract, when read as a whole, "leave it generally uncertain as to the available remedies and limitations imposed upon the respective parties."[17] Plaintiff contends that because the liquidated damages clause is not listed under the section in the contract relating to limitation of liability or termination of default, the limitation of liability provision, therefore, should not apply to the liquidated damages sustained by defendant's failure to submit or complete Phase 1 timely. The Court disagrees. When reading the contract as a whole, the liquidated damages provision along with the limitation of liability provision demonstrate that the parties agreed that damages would be difficult to ascertain in the event of a breach and that the appropriate measure of those damages could be determined by the amount plaintiff had already paid defendant under the contract. The limitation of liability provision set the maximum amount that plaintiff could recover from defendant as affirmative relief for a breach by defendant. Because plaintiff has paid nothing to defendant under the contract, the maximum amount of affirmative relief plaintiff can recover for breach of contract is nothing. Reading the two provisions together, the contract is unambiguous.

Plaintiff also argues that a deliverables provision, that required plaintiff to pay defendant only when specific deliverables were accepted by plaintiff, creates ambiguity when reading the

---

[16] *LDCircuit v. Sprint Comm. Co.*, 364 F. Supp. 2d 1246, 1256 (D. Kan. 2005) (citing *Arnold v. S.J.L. of Kan. Corp.*, 822 P.2d 64, 67 (Kan. 1991)).

[17] (Doc. 17 at 11.)

6

contract as a whole. Because no deliverables were accepted by plaintiff, plaintiff never paid defendant under the contract. There is no ambiguity when reading this provision along with the limitation of liability provision. The parties agreed to limit defendant's liability to plaintiff to the monies received from plaintiff. Since there were no satisfactory deliveries, nothing was paid to defendant, and, therefore, plaintiff's recovery is capped by the limitation of liability provision.

Plaintiff also complains that the termination for default provision further compounds the ambiguity. Under this provision, when defendant is in default plaintiff will pay defendant for any work that has been satisfactorily completed. This provision, like the liquidated damages provision, can be read with the limitation of liability provision without ambiguity. In this case, defendant defaulted, plaintiff paid nothing to defendant because no work had been satisfactorily completed, and thus, the limitation of liability provision prevents plaintiff from recovering anything from defendant.

Finally plaintiffs argue that the provision requiring defendant to maintain insurance also creates ambiguity. The Court assumes that plaintiff points to this provision to demonstrate that if defendant committed an error, plaintiffs would benefit from the insurance coverage. However, in such a scenario, the limitation of liability provision would still apply. The contract unambiguously states that plaintiff can only recover amounts paid to defendant under the contract.

While plaintiff argues at this point in time that the remedy provisions in the contract are ambiguous, when "viewed from the perspective of the date which the contract was entered

into"[18] the inclusion of the various provisions seems perfectly logical.  Defendant sought to limit its liability to the amount it was paid under the contract.  Meanwhile, plaintiff sought to limit its liability under the contract by including the termination of convenience provision.  Both parties benefitted from these clauses which would limit their liability under the contract in case of default.  The parties agreed to all of these terms which when read together are unambiguous.  Therefore, the Court must apply the provisions of the contract according to the plain and general meanings and enforce the contract according to its terms.

After determining that the limitation of liability provision is unambiguous, the Court must next consider whether the provision is enforceable.  Kansas courts recognize that "mentally competent parties may make contracts on their own terms and fashion their own remedies where they are not illegal, contrary to public policy, or obtained by fraud, mistake, overreaching, or duress."[19]  A party who freely and voluntarily makes a contract is bound by that contract unless it is so one-sided that it is found to be unconscionable.[20]  Under Kansas law, "the general rule is that contractual agreements limiting liability are valid if fairly and knowingly entered into and if not in violation of other provisions of law."[21]  In this case, plaintiff does not argue that the agreement was unconscionable, and plaintiff does not provide any evidence of fraud, mistake or duress.  As defendant points out, plaintiff is a sophisticated government entity capable of

---

[18]*LDCircuit*, 364 F. Supp. 2d at 1257 (pointing out that while one party's view at the time of the breach was that one provision rendered another provision meaningless, it was not clear that this was the parties' perspective at the time they entered into the contract).

[19]*Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1263 (Kan. 1987) (citations omitted); *see also Willie v. Southwestern Bell Tel. Co.*, 549 P.2d 903, 905 (Kan. 1976).

[20]*Id.* (citing *Willie*, 549 P.2d at 903).

[21]*Id.* at 1271; *see also LDCircuit*, 364 F. Supp. 2d at 1260 (finding the limitation of liability provision in the parties' contract valid and enforceable against plaintiff's breach of contract claim).

understanding the obligations of entering into a contract.

While plaintiff presents several arguments in its Response as to why this Court should not grant summary judgment in favor of defendant, defendant correctly points out that plaintiff's arguments are more appropriately presented as affirmative defenses against defendant's counterclaim. Plaintiff argues that the limitation of liability provision is a cap, not a bar, to plaintiff's recovery. While this statement is true, plaintiff's recovery is capped at the amount paid to defendant, which was nothing. Therefore, plaintiff is not entitled to affirmative relief against defendant. However, plaintiff is still able to assert affirmative defenses against defendant in order to defend the pending counterclaim. While the Court is disposing of plaintiff's breach of contract claim, the Court is not extinguishing any affirmative defenses that plaintiff may raise against defendant's counterclaim.

Plaintiff argues that its breach of contract claim should not be dismissed because plaintiff is entitled to pursue its claim through setoff. Plaintiff refers the Court to *Federal Deposit Insurance Corporation v. Palermo*,[22] a case in which the Tenth Circuit held that defendant could pursue a fraud claim barred by the statute of limitations under Oklahoma law "only as a set-off or counterclaim in the nature of recoupment, not as a claim for affirmative relief."[23] While plaintiff is correct that it can still pursue setoff, such a claim will operate as an affirmative defense against defendant's counterclaim. The language from *Palermo* that plaintiff quotes expressly says that setoff cannot be used as a claim for affirmative relief. Likewise, plaintiff

---

[22] 815 F.2d 1329 (10th Cir. 1987).

[23] *Id.* at 1341. Kansas courts have also allowed a defendant's claim barred by the statute of limitations to be used as a defense or as a set off against plaintiff's claim. *See, e.g., Hatfield v. Burlington No. R.R. Co. v. Bingham Transp., Inc.*, 747 F. Supp. 634, 641 (D. Kan 1990); *see also Mynatt v. Collis*, 57 P.3d 513, 526 (Kan. 2002).

cannot seek affirmative relief against defendant when the limitation of liability provision caps plaintiff's recovery. Therefore, summary judgment must be granted in favor of defendant.

Plaintiff also contends that summary judgment is not appropriate because a condition precedent has not occurred. Plaintiff argues that its claim is not ripe because plaintiff has not paid anything yet to defendant, and therefore dismissing plaintiff's claim would be a jurisdictional dismissal and should be without prejudice.[24] However, the Court does not understand how any amount under the contract is going to be paid in the future by defendant to plaintiff to satisfy the condition precedent. If plaintiff is referring to the possibility that it may be required to pay defendant to satisfy a judgment, such payments would not be under the contract. Certainly when the parties entered into the contract, they did so with the hopes of a fruitful business relationship rather than contemplating the current litigation. Therefore, when the limitation of liability provision refers to the amount paid under the contract, the amount includes payments by plaintiff for defendant's services, but would not include payments by plaintiff to defendant to satisfy a judgment. Plaintiff even points out that the limitation of liability provision uses the word "paid," a past tense verb. While plaintiff argues that interpreting the limitation of liability provision as only including past payments is not what the parties intended when they entered into the contract, the Court disagrees for the same reasons that it found that the contract is unambiguous. The use of the past tense of "paid" provides further support that the parties contemplated that the amount paid under the contract would be for services rendered by the defendant and not an amount to satisfy a judgment. Further, if there is a judgment against plaintiff in this case, that judgment may be set off by plaintiff's claims for damages from the

---

[24]*See Park Lake Res. LLC v. United States Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

defendant. Again, with this summary judgment, the Court is not taking away plaintiff's ability to use its affirmative defenses.

Although the parties' relationship has now dissolved and the current circumstances make the limitation of liability provision disadvantageous to plaintiff, plaintiff is bound by the contract that contains the limitation of liability clause. The limitation of liability clause caps defendant's liability to the amount plaintiff has paid defendant under the contract. Because it is undisputed that plaintiff has paid nothing to defendant under the contract, plaintiff cannot recover any affirmative relief from defendant. Accordingly, this Court must grant summary judgment in favor of defendant on plaintiff's breach of contract claim.[25]

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED.**

**IT IS SO ORDERED**.

Dated this 7th day of February 2006.

                                             S/ Julie A. Robinson
                                             Julie A. Robinson
                                             United States District Judge

---

[25] *See also C.R. Specialty Co., Inc. v. Nat'l Guardian Sec. Servs. Corp.*, No. 87-2633, 1989 WL 59117, at *2 (D. Kan. May 18, 1989) (granting partial summary judgment on plaintiff's negligence and breach of contract claims because the contract's limitation of liability clause capped plaintiff's recovery at fifty dollars).